## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**SEAN REILLY,**

  **Petitioner,**

**v.**          **Case No. 4:18cv225-MW/CAS**

**MARK S. INCH, Secretary,**
**Department of Corrections,**

  **Respondent.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

On April 27, 2018, Sean Reilly, a state inmate proceeding pro se,

filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF

No. 1, and a supporting memorandum, ECF No. 4.  He later filed an

amended § 2254 petition.  ECF No. 22.  On May 13, 2019, Respondent

filed an answer, with exhibits.  ECF No. 26.  Petitioner has filed a reply,

with exhibits, ECF No. 30, and a supplemental reply, ECF No. 34.

Petitioner has also filed a notice of supplemental authority, ECF No. 31; a

motion for appointment of counsel, ECF No. 32; and a motion requesting

an evidentiary hearing, ECF No. 33.

The matter was referred to the undersigned United States Magistrate

Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

Northern District of Florida Local Rule 72.2(B).  After careful consideration,

the undersigned has determined no evidentiary hearing is required for the

disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases.  The

pleadings before the Court show the § 2254 petition, as well as Petitioner's

pending motions, should be denied.

## **Procedural Background**

This proceeding involves two underlying state criminal cases from the

Second Judicial Circuit, Leon County:  2008-CF-781 and 2008-CF-4221.  In

case number **2008-CF-781**, on March 10, 2008, the State of Florida filed an

amended information charging Petitioner Sean Reilly with witness

tampering, a third degree felony, in violation of section 914.22(1), Florida

Statutes.  Ex. E1 at 10; *see id*. at 9 (Information).[1]  Reilly ultimately

proceeded to a jury trial on March 4, 2010, before Judge James C.

Hankinson.  Ex. E2.  During the trial, Reilly represented himself; he did not

testify in his own defense.  *Id*. at 2, 13, 117-18.  The jury found him guilty

as charged.  Ex. E1 at 70; Ex. E2 at 163-64.  Judge Hankinson adjudicated

Reilly guilty and sentenced him, on March 12, 2010, to ten (10) months in

---

[1] Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 26.

jail, followed by two (2) years of community control, followed by two (2) years of probation.  Ex. E1 at 82-88, E4.  Reilly appealed his conviction and sentence to the First District Court of Appeal (First DCA), assigned case number 1D10-1359, and that court per curiam affirmed the case without a written opinion on July 28, 2011.  Ex. E7; Reilly v. State, 77 So. 3d 184 (Fla. 1st DCA 2011).

On September 10, 2010, Reilly's community control officer filed an affidavit in state court alleging Reilly had violated the conditions of his community control by not remaining confined to his approved residence on a dozen occasions.  Ex. F1 at 165-92.  On December 16, 2010, after a violation of community control (VOCC) hearing, Judge Hankinson found Reilly willfully and materially violated his conditions, revoked community control, and sentenced him to four (4) years in prison, to run concurrently with the sentence imposed in case number 2008-CF-4221A.  Ex. F2 at 215; see Ex. F3 at 223-83 (transcript of VOCC hearing).  Reilly did not testify at the hearing and the defense presented no witnesses or evidence.  Ex. F4 at 269.  Reilly appealed, assigned First DCA case number 1D11-88, and his counsel filed an initial brief pursuant to Anders v. California, 386 U.S.

738 (1967), indicating no issues of arguable merit existed.  Ex. F5.  Reilly

filed a pro se brief.  Ex. F7.  On January 28, 2014, the First DCA per curiam

affirmed the case without a written opinion.  Ex. F8; Reilly v. State, 132 So.

3d 229 (Fla. 1st DCA 2014).

    In the meantime, Reilly filed several pro se motions in state court

including a motion for postconviction relief on February 22, 2012, alleging

seven grounds.  Ex. Q1 at 1-83.  On March 29, 2012, Judge Hankinson

summarily denied relief.  Id. at 84-109.  Reilly appealed and the First DCA

per curiam affirmed the case, assigned number 1D12-2463, without a

written opinion on October 22, 2012.  Ex. Q2; Reilly v. State, 100 So. 3d

683 (Fla. 1st DCA 2012).  The mandate issued November 19, 2012.  Ex.

Q3.

    In addition, the First DCA ultimately granted him a belated appeal in

written opinion issued November 16, 2012, in case number 1D12-109,

allowing a direct appeal of Reilly's conviction for witness tampering in

circuit court case number 2008-CF-781.  Ex. D7; Reilly v. State, 102 So. 3d

680 (Fla. 1st DCA 2012).  At the conclusion of that belated appeal,

assigned case number 1D12-5909, the First DCA affirmed the conviction

and sentence without a written opinion on October 15, 2013.  Ex. B8; <u>Reilly</u>

<u>v. State</u>, 122 So. 3d 872 (Fla. 1st DCA 2013).

In case number **2008-CF-4221**, on May 8, 2009, the State of Florida

filed an amended information charging Reilly with several counts:  three

counts of criminal use of personal identification information (Counts 1, 2,

and 5); stalking (Count 3); and causing a phone to ring repeatedly (Count

4).  Ex. R1 at 2-3.  Reilly proceeded to a jury trial before Judge Hankinson

on the three counts of criminal use of personal identification information.

Ex. R3 at 16.  The State ultimately nolle prossed Counts 3 and 4.  Ex. R7 at

159.  The jury found him guilty as charged on two of the counts and not

guilty on the third.  Ex. R1 at 71-72.  On September 22, 2009, Judge

Hankinson withheld adjudication of guilt and sentenced Reilly to eleven

(11) months and twenty-nine (29) days in jail, to be followed by two (2)

years of probation on the first count and, on the second count, two (2)

years of community control, to be followed by two (2) years of probation,

consecutive to the sentence imposed on the first count.  Ex. R1 at 73-81;

R6.

Reilly appealed his conviction and sentence to the First DCA, assigned case number 1D09-5013.  Ex. R1 at 108; Exs. R9, R10.  On November 28, 2011, the First DCA per curiam affirmed the case without a written opinion.  Ex. R11; Reilly v. State, 75 So. 3d 725 (Fla. 1st DCA 2011).

On October 14, 2009, Reilly filed, through counsel, a stipulated motion for additional jail credit, Ex. H1 at 154-55, which Judge Hankinson granted by order on October 16, 2009, Ex. H1 at 156-57.  Reilly also filed several pro se motions which the court dismissed as unauthorized because Reilly was represented by counsel.

On September 10, 2010, Reilly's probation officer filed an affidavit in state court alleging Reilly had violated the conditions of his community control by not remaining confined to his approved residence on a dozen occasions.  Ex. F1 at 165-92.  On December 16, 2010, after a VOCC hearing, Judge Hankinson found Reilly willfully violated his conditions, revoked community control, and sentenced him to five (5) years in prison, on Count 1, to run concurrently with the four-year sentence imposed in case number 2008-CF-781.  Ex. F2 at 215; *see* Ex. F3 at 223-83 (transcript

of VOCC hearing).  On Count 5, the court sentenced Reilly to two (2) years

of community control, followed by two (2) years of probation, to run

consecutively to the sentence imposed on Count 1.  Ex. H3 at 430; Ex. F3

at 280.  Although Reilly appealed his sentence on revocation of community

control in 2008-CF-4221, as indicated above, it is not clear that he also

appealed his sentence on revocation of community control in 2008-CF-

4221.  *See* Ex. A2.

On April 25, 2012, Reilly filed a pro se petition for writ of habeas

corpus in the First DCA seeking a belated appeal in both cases.  Ex. J3.

The First DCA granted relief in a written opinion on July 31, 2012.  Reilly v.

State, 93 So. 3d 520 (Fla. 1st DCA 2012) (1D12-2142); Ex. J3.  The

mandate issued August 28, 2012.  Ex. J4.

Among other filings, on August 28, 2012, Reilly submitted a pro se

Motion to Vacate and Set Aside Conviction and Sentence Pursuant to Fla.

R. Crim. P. 3.850, alleging nineteen (19) claims.  Ex. H3 at 454-512.  He

subsequently filed a motion to supplement his Rule 3.850 motion, Ex. H3 at

513-19, and an amended Rule 3.850 motion, Ex. H4 at 563-624.

On March 6, 2013, Reilly filed a pro se petition for writ of habeas

corpus in the First DCA, alleging ineffective assistance of appellate

counsel.  Ex. L1.  On March 19, 2013, he moved to supplement the

petition.  Ex. L2.  On April 5, 2013, the First DCA denied the petition on the

merits, assigned case number 1D13-1183.  Reilly v. State, 110 So. 3d 534

(Fla. 1st DCA 2013); Ex. L3.  Reilly subsequently filed other petitions in the

First DCA, which were denied.  Exs. M1, M2, K1, K2, K3.

On July 25, 2013, Reilly filed another supplement to his Rule 3.850

motion, adding a claim alleging newly discovered evidence.  Ex. O1A at 97-

101.  He then filed an amended motion, supplementing his Rule 3.850

motion with two additional claims of newly discovered evidence.  Ex. O1A

at 102-12.  On December 28, 2016, he filed a "Motion Supplementing Rule

3.850 with a New Claim Based on a Manifest Injustice."  Ex. O1A at 113-

22.  On February 21, 2017, the state trial court dismissed that motion as an

unauthorized pro se pleading because Reilly was represented by counsel,

Robert A. Morris.  *Id*. at 123.  That same day, the court entered another

order setting an evidentiary hearing on Reilly's 3.850 motions for April 18,

2017.  *Id*. at 125.  On March 3, 2017, and March 21, 2017, Reilly filed pro

se motions to supplement, *id*. at 126-38 and 153-65, both of which the court dismissed as unauthorized by orders on March 23, 2017, *id*. at 143, and April 13, 2017, *id*. at 168.

The evidentiary hearing took place on April 19, 2018, before Judge Hankinson.  Ex. O1B (transcript).  At the conclusion of the hearing, the judge denied relief.  *Id*. at 258-63.  That same day, the judge rendered an order denying postconviction relief "[b]ased on the reasons as announced on the record," finding that Reilly 'has failed to show that he received ineffective assistance of counsel or that he was prejudiced by any alleged deficiency."  Ex. O1A at 181.  The order further explains Reilly "has filed numerous other pleadings and claims in both cases" and "[a]ll other claims were abandoned at the evidentiary hearing by counsel," and, therefore, "all other claims in both cases are denied."  *Id*.

Reilly appealed the denial of postconviction relief to the First DCA, assigned case number 1D18-1894.  On May 24, 2019, the First DCA per curiam affirmed the case without a written opinion.  On June 10, 2019, Reilly filed a motion for rehearing.  By order on July 10, 2019, the First DCA denied the motion for rehearing.  *See* online docket for 1D18-1894.  On

August 21, 2019, the court denied Reilly's motion, filed July 8, 2019,

seeking a written opinion.  *See id.*  The mandate issued September 11,

2019.  *See id.*

As indicated above, on April 27, 2018, Reilly filed a petition for writ of

habeas corpus in this Court pursuant to 28 U.S.C. § 2254, ECF No. 1, and

a supporting memorandum, ECF No. 4.  He later filed an amended § 2254

petition.  ECF No. 22.  In the amended § 2254 petition, Reilly raises four

grounds, all claiming ineffective assistance of counsel (IAC):

> **(1)  IAC – Failure to Investigate and Pursue Viable Defense of Entrapment and Unwilful Violation of Probation**:
> Petitioner asserts his probation officer informed him he could go anywhere in Miami-Dade County to look for a job and he had permission to be absent from his residence on each of the twelve occasions alleged in the revocation of probation affidavit. ECF No. 22 at 4-5.

> **(2)  IAC – Misadvised Petitioner Not to Testify to Corroborate Viable Defenses of Entrapment and Unwilful Violation of Probation and Failed to Locate Weekly Schedule Log Forms**:  Petitioner asserts if counsel "had properly advised him to testify in his own defense," Petitioner "would have informed the Court that he had prior approval to be away from his house and he was not instructed on being at any specific place."  *Id.* at 8.  Petitioner also asserts "[t]rial counsel could have obtained the weekly schedule to support the defense that Petitioner had permission to be away from his home and, therefore, did not willfully and substantially violate the conditions of his probation."  *Id.*

**(3)  IAC – Failure to Investigate, Hire, and Call Mental Health Expert Witness to Corroborate Defense of Unwilful Violation of Probation**:  Petitioner asserts he has struggled with Attention Deficit Disorder (ADD) all his life and could not afford his ADD medication.  *Id*. at 10.  He asserts "his mental illness was so debilitating to the point that he was unable to comply with the terms of his probation."  *Id*.  He asserts that a mental health expert could have opined as to the willfulness of the violation.  *Id*. at 11.

**(4)  IAC – Affirmatively Misadvised Petitioner Not to Accept the State's Plea Offer of Four Years in Prison**:  Petitioner asserts that counsel informed him the State's case was weak and the State could not prove a substantial and willful violation of probation because "all they had was hearsay evidence."  *Id*. at 14.  Petitioner asserts that counsel "misinformed him that the trial court would reinstate his probation based on the hearsay testimony."  *Id*.  Petitioner asserts that if counsel had properly advised him, he would have accepted the plea offer.  *Id*.

Respondent has filed an answer, with exhibits.  ECF No. 26.  Reilly has not filed a reply, although he was given the opportunity to do so.  *See* ECF No. 29.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

Case No. 4:18cv225-MW/CAS

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d). *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011). "This is

a 'difficult to meet' and 'highly deferential standard for evaluating state-

court rulings, which demands that state-court decisions be given the benefit

of the doubt.'" Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562

U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

This Court's review "is limited to the record that was before the state court

that adjudicated the claim on the merits." *Id*.

For claims of ineffective assistance of counsel (IAC), the United

States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so

serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.*  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*

## <u>Ground 1</u>:  IAC – Failure to Investigate and Pursue Viable Defense Of Entrapment and Unwilful Violation of Community Control

In his first ground, Petitioner Reilly argues defense counsel provided ineffective assistance by not investigating and pursuing a defense of entrapment and unwilful violation of community control.  ECF No. 22 at 4-5. Reilly explains that his probation officer told him he could go anywhere in the county to look for a job and he had permission to be absent from his residence on the twelve occasions alleged in the violation affidavit.  *Id*.  He also argues that his post-conviction counsel performed ineffectively by abandoning this claim at the evidentiary hearing.  *Id*. at 5.

Respondent asserts Reilly did not exhaust this claim and it is now procedurally barred under state law.  ECF No. 26 at 19, 21.  Respondent asserts Reilly has not demonstrated cause to excuse the default because he has not established ineffectiveness by post-conviction counsel.  *Id*. at 21.

As a preliminary matter, at the start of the evidentiary hearing, the post-conviction judge indicated that Reilly had just filed, on April 11 or 12, a motion to discharge his counsel, Baya Harrison, in case number 2014-CF-17, but allow him to continue in the other two cases, 2008-CF-781 and 2008-CF-4221.  Ex. O1B at 188.  Mr. Harrison indicated he had not "heard

about this latest matter." *Id*. Mr. Harrison made the following statements

on the record:

> MR. HARRISON:  . . . I've been involved in this case for many, many months now, and I don't want to – certainly don't want to get into an argument on the merits with – with my client; but I can simply tell you, there are rules that govern my conduct, one of which is that I cannot file a claim that I do not believe has merit factually or legally,  I'm – I'm not allowed to do that. When a decision is made by a Defendant to have a lawyer, that's his decision.  He doesn't have to have me, or he doesn't have to have a lawyer.  But once I am appointed, I make the decision on what claims to pursue.
>
> I will simply tell you – I don't want to get into the details of anything – I've been through these files multiple times, read these records, I would love to find claims, post-conviction claims.  I cannot in good faith say that I could find a basis to file a claim in 2014-CF-17.  Believe me, I – I – I have studied that, so I just want you to know that.
>
> And I conveyed to the client, since he's filed this motion I can tell you that I conveyed to him and his father months ago that if he disagreed with my decision, you know, he could always fire me; he could always go out and retain a lawyer; but there are a lot of issues when – when a – when a young man files an ineffective claim, he has to swear to it under oath and under penalty of perjury.  And believe me, that is something that – that I thought very carefully about when I made the decision that I could not find anything in that record in 14-CF-17 upon which to base an IAC claim.
>
> THE COURT:  Well, the record is a little voluminous, so, you know, I spent a great deal of time yesterday reviewing it.  But you agree with my assessment, there is no post-conviction claim at this point in 2014-CF-17?
>
> MR. HARRISON:  That's correct, sir.

> THE COURT:  All right.  So do you see any complication from me just allowing you – just discharging you from that case, and he – he still does have some time to file what he thinks may be appropriate.  But do you see that causes any confusion here today?
>
> MR. HARRISON:  Not with me, no, sir, it doesn't.

*Id*. at 189-90.  Accordingly, the post-conviction judge granted Reilly's motion to discharge Mr. Harrison in case number 2014-CF-17, which was not being heard at the evidentiary hearing.  *Id*. at 188, 191.  The judge confirmed with Reilly that this was how he wanted to proceed and Reilly responded, "Yes, sir."  *Id*. at 191.  Thus, if Reilly was not pleased with how Mr. Harrison was handling post-conviction matters in the cases being heard at the evidentiary hearing, 2008-CF-781 and 2008-CF-4221, and wished to proceed on the claims his attorney wanted to abandon, Reilly clearly knew how to request his lawyer be discharged.

Regardless, on the merits, Reilly's claim fails as it is refuted by portions of the transcript of the violation hearing.  *See* Ex. F3.  In particular, although Reilly asserts his probation officer gave him permission to be absent from his residence on each of the twelve instances because he was searching for a job, the testimony and evidence presented by the probation officer at the violation hearing indicates that, on each of those instances, Reilly was not performing job searches.

First, Officer Walter Langley testified that he briefed Reilly on the requirements of community control and GPS, and he explained to Reilly that, on community control, he had to stay confined to his residence unless he had prior approval to leave his residence. *Id*. at 228-29. Reilly indicated to the officer that he understood all the instructions. *Id*. at 229-30.

Second, Officer Guelsy Herrera testified she met with Reilly two days prior to his release on community control. *Id*. at 234. She testified that the notes in the file indicated Reilly was instructed on the conditions of GPS and community control by Officers Langley and Summers before she met with Reilly. *Id*. at 234-35. Officer Herrera testified that she went over everything again with Reilly. *Id*. at 235. She went over each condition one by one and Reilly indicated he understood. *Id*. She testified that, instead of being at his residence as required or searching for a job as permitted, Reilly was (1) playing basketball at a local park, Ex. F3 at 238-39, and he listed that he did not have any employment contacts; (2) visiting a friend at the friend's house and at the beach, Ex. F3 at 239-40, and he did not list any job searches; (3) visiting a park and restaurant, Ex. F3 at 241-42; (4) visiting a friend at the friend's house and a park, Ex. F3 at 245; (5) at the beach, Ex. F.3 at 247-49; (6) visiting a friend at the friend's house, Ex. F3 at 253; (7) attending a professional baseball game, Ex. F3 254-55; (8)

visiting a friend at the friend's house and the beach, Ex. F3 at 255-56.

Reilly's job search log was admitted into evidence. *Id*. at 244.

In particular, regarding playing basketball at the park on August 13, 2010, Officer Herrera testified:

> Q  I'd like to start with the first alleged violation, on August 13th, 2010.  Could you tell me what the alleged violation is on that date?
>
> A  He is at a park, Douglas Park, which is on 37th Avenue between 4:37 and 6:18.
>
> Q  Now, what did his daily schedule state that Mr. Reilly, where he was supposed to be that day?
>
> A  On August 13th he was supposed to be searching for jobs, employment.
>
> Q  Did he list any job search or employment search at Douglas Park?
>
> A  I do not recall, but I will double-check.  He actually didn't state anything for that day.
>
> Q  So he listed that he didn't have any employment contacts.
>
> A  Correct.
>
> Q  So based on that, did he have permission to be at Douglas Park from 4:37 to 6:18 p.m.?
>
> A  No, he did not.
>
> Q  And did you – strike that.  If he had a job interview at Douglas Park, let's say, for park and recreation staff, then he would have been allowed to have been there, right?

A  Correct.

Q  But he didn't list any employment contact?

A  No.

Q  Did you ultimately later on ask Mr. Reilly what he was doing at the park?

A  Yes.

Q  And what did he tell you?

A  Playing basketball.

*Id*. at 238-39.  Officer Herrera testified she talked with Reilly about him being at the beach on August 14 and asked him if he had any legitimate employment purposes there and, "He just smiled."  Id. at 240.  Further, regarding Reilly's unauthorized attendance at the baseball game on August 22, Officer Herrera testified:

Q  And did you discuss with him his attendance at this baseball game?

A  Yes, I did.

Q  And what was his response?

A  He stated that he had gone to an interview and they had given him tickets so he went to the game.

Q  Okay.  And did you tell him – did you discuss with him the fact that he didn't have approval on that date?

A  Yes.

> Q  And did he acknowledge that he knew he didn't have approval?
>
> A  He said, "Sorry."

*Id*. at 255.  Officer Herrera testified that before August 24, Reilly "was given an open time frame during the day to go look for employment" and write it on the job search log, but after that date, "[h]e wasn't allowed to go out for job searches any longer unless he had a specific interview at a specific place. . . .[h]e was not allowed to just go roam around and look for employment."  *Id*. at 263-64.

Based on the foregoing, this ground is unexhausted and procedurally defaulted.   Reilly has not shown prejudice or cause to excuse the default and has not established his post-conviction counsel performed ineffectively. Moreover, if considered on the merits, this ground should be denied.

### Ground 2:  IAC – Misadvised Petitioner Not to Testify to Corroborate Defenses of Entrapment and Unwilful Violation and Failed to Locate Weekly Schedule Forms

In his second ground, Petitioner Reilly argues defense counsel provided ineffective assistance by advising him not to testify at the VOCC hearing and not locating the weekly schedule forms, which Reilly asserts would have corroborated his defenses of entrapment and unwilful violation. ECF No. 22 at 8.  Reilly cites <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012),

and asserts he "did not raise this claim in his postconviction motion because he did not have postconviction counsel to help him prepare a meaningful Rule 3.850 motion and his, later appointed, postconviction counsel was ineffective for failing to glean and investigate this ineffective-assistance-of-trial counsel claim to raise during the postconviction proceedings." ECF No. 22 at 9.

In Martinez, the U.S. Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. In particular, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id*. at 17. To overcome the default, Petitioner must show "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id*. at 14. Petitioner must also show he was actually prejudiced by the default. Coleman v. Thompson, 501 U.S. 722, 750 (1991). To establish actual prejudice, and permit federal

habeas review of the claim, petitioner must show at least a reasonable probability the result of the proceeding would have been different.  *See, e.g.*, Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).

Here, a review of the state court record reflects that the underlying ineffective-assistance-of-trial-counsel claim is not a substantial one.  In support of his claim, Reilly states that his officer had given him permission to be away from his house "to look for employment and he could be away from his residence all day and he had to return at the end of the day."  ECF No. 22 at 8.  He further states "the weekly schedule," if obtained by counsel, would have "support[ed] the defense that Petitioner had permission to be away from his home and, therefore, did not willfully and substantially violate the conditions of his probation."  *Id*.

As explained in the analysis of Ground 1, *supra*, evidence and testimony presented at the violation hearing established that Reilly had several outings that were not authorized by his probation officer and were not job-search related.  During the violation hearing, Reilly confirmed with the judge that he did not want to testify and that it was his decision:

> MR. ROBERT HARPER [defense counsel]:  Let me get this on the record and make sure.  Your Honor, I've consulted with the defendant about his right to testify and I believe it's his intention not to testify, is the way it was communicated to me.

> THE COURT:  All right.  Well, let's hear it from him.

If you would stand up please, Mr. Reilly.  Raise your right hand.

(Defendant Sean Reilly duly sworn)

THE COURT:  All right.  State your full name.

THE WITNESS:  Sean P. Reilly.

THE COURT:  [I]f you'll speak up.  You don't need to lean over there.  Do you wish to testify as to the allegations, Mr. Reilly?

THE WITNESS:  No, your Honor.

THE COURT:  You understand you have a right to if you want to?

THE WITNESS:  Yes, your Honor.

THE COURT:  All right.  It's not Mr. Harper's decision.  It's your decision.  Do you understand that?

THE WITNESS:  Yes, I understand.

THE COURT:  Do you wish to testify?

THE WITNESS:  No, your Honor.

Ex. F4 at 268-69; *see id.* at 271 (defense counsel states, in argument, "I thought it was a good idea for Mr. Reilly not to testify; I agree with his decision").  Reilly thus acknowledged that he did not wish to testify and that it was his decision to make, not his lawyer's.

Moreover, even had Reilly testified at the hearing, such would not change the State's evidence regarding his violations.  Reilly has not shown at least a reasonable probability the result of the proceeding would have been different, that is, that the judge would not have found by a preponderance of the evidence that he violated the conditions of community control.

Based on the foregoing, Petitioner Reilly's underlying IAC claim is not substantial.  Petitioner has not demonstrated prejudice by the procedural default.  This ground should be denied.

### <u>Ground 3</u>:  IAC – Failure to Investigate, Hire, and Call Mental Health Expert Witness to Corroborate Unwilful Violation

In his third ground, Petitioner Reilly argues defense counsel provided ineffective assistance by not using a mental health expert witness to testify regarding his ADD, which Reilly asserts was "so debilitating . . . that he was unable to comply with the terms of his probation."  ECF No. 22 at 11.  As with Ground 1, Reilly argues that his post-conviction counsel performed ineffectively by abandoning this claim at the evidentiary hearing.  *Id*. at 11. Respondent asserts Reilly did not exhaust this claim and it is now procedurally barred under state law.  ECF No. 26 at 19, 21.  Respondent asserts Reilly has not demonstrated cause to excuse the default because

he has not established ineffectiveness by post-conviction counsel.  *Id.* at 21.

In addition, as Respondent points out, Reilly does not include, in support of his claim, an affidavit from a mental health expert specifying the testimony that would have been presented.  ECF No. 26 at 44.  Thus, Reilly's claim is entirely speculative and insufficient to establish prejudice under Strickland.  *See, e.g.,* Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (explaining petitioner is not entitled to habeas relief where claims are merely "conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible"); Duran v. Walker, 223 F. App'x 865, 875 (11th Cir. 2007).  *Cf., e.g.*, Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1294 (11th Cir. 2012) (reversing and remanding for evidentiary hearing on IAC claim where, among other things, "Pope has alleged, through his experts' affidavits, that his mental illnesses, both singularly and in combination, impaired all aspects of his cognitive and emotional processes and left him predisposed to act in an irrational manner when confronted with even minimal stressors").  This ground should be denied.

## Ground 4:  IAC – Affirmatively Misadvised Petitioner Not to Accept Plea Offer

In his fourth ground, Petitioner Reilly argues his trial counsel provided ineffective assistance by affirmatively misadvising him to reject the State's plea offer of four (4) years in prison, the State's case was weak, and the State could not prove a willful violation because all the State had was hearsay evidence.  ECF No. 22 at 14.  As with Grounds 1 and 3, Reilly argues that his post-conviction counsel performed ineffectively by abandoning this claim at the evidentiary hearing.  *Id*. at 15.  Respondent asserts Reilly did not exhaust this claim and it is now procedurally barred under state law.  ECF No. 26 at 19, 27.  Respondent asserts Reilly has not demonstrated cause to excuse the default because he has not established ineffectiveness by post-conviction counsel.  *Id*. at 27.

As Respondent indicates, because this claim was not addressed in state court, the record does not contain evidence of a four-year plea offer or counsel's advice regarding such offer.  Further, even if counsel did advise Reilly that the State could not prove a willful violation based <u>only</u> on hearsay evidence, such advice would have been legally sound.  *See, e.g*., <u>Russell v. State</u>, 982 So. 2d 642, 646 (Fla. 2008); <u>Rodgers v. State</u>, 171 So. 3d 236, 238 (Fla. 1st DCA 2015).  Here, however, as the judge explained at the hearing, the evidence presented was not "solely a matter

of hearsay" and "[t]here may be some hearsay mixed into it, but it's more a compilation of the records that have been gathered, both admissions, although they are statements by a person, are an exception to hearsay." Ex. F4 at 271.

Based on the foregoing, Petitioner Reilly's underlying IAC claim is not substantial.  Petitioner has not demonstrated prejudice by the procedural default.  This ground should be denied.

## Conclusion

Based on the foregoing, it is respectfully **RECOMMENDED** that the amended § 2254 petition, ECF No. 22, be **DENIED**; Petitioner's motion for appointment of counsel, ECF No. 32, be **DENIED**; and Petitioner's motion for an evidentiary hearing, ECF No. 33, be **DENIED**.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any arguments as to whether a certificate should issue by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the amended § 2254 petition, ECF No. 22, be **DENIED**; Petitioner's motion for appointment of counsel, ECF No. 32, be **DENIED**; and Petitioner's motion for an evidentiary hearing, ECF No. 33, be **DENIED**.  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 18, 2019.

S/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.